ANDREW G. OOSTERBAAN
Chief, Child Exploitation and Obscenity Section
Criminal Division - Department of Justice

STEVE GROCKI (VABN 41502)
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division - Department of Justice

JENNIFER TORITTO LEONARDO (LICENSED IN NEW YORK)
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division - Department of Justice

1400 New York Ave. NW
Ste. 600
Washington, DC 20005
p (202) 616-8900
f (202) 514-1793

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BERNARD V. WARD,<br><br>　　Defendant. | No. CR 07-0602 VRW<br><br>RESPONSE OPPOSING MOTION FOR A RULING THAT THE DEFENDANT IS ENTITLED TO PRESENT THE AFFIRMATIVE DEFENSE THAT HE RECEIVED AND DISTRIBUTED THE CHARGED CONTRABAND FOR LEGITIMATE FIRST AMENDMENT-PROTECTED PURPOSES |

DATE:      May 8, 2008
TIME:      2:00pm
COURT:   6, 17th Floor
JUDGE:    Honorable Vaugh R. Walker

　　Now comes the United States of America, by its counsel, Andrew G. Oosterbaan, Chief, Child Exploitation and Obscenity Section, Steven Grocki, Trial Attorney, and Jennifer Leonardo, Trial Attorney, with this response in opposition to defendant's Motion for a ruling that the defendant is entitled to present the affirmative defense that he received and distributed the charged contraband for a legitimate, First Amendment-protected purpose, namely a journalistic

enterprise, filed by defendant, Bernard V. Ward, on April 10, 2008, for the reasons stated in the attached memorandum, which is incorporated herein by reference.

        Respectfully submitted,

        ANDREW G. OOSTERBAAN
        Chief, Child Exploitation and Obscenity Section
        Criminal Division - Department of Justice

By:   /s/ Steven J. Grocki
      STEVE GROCKI (VABN 41502)
      Trial Attorney
      Child Exploitation and Obscenity Section
      Criminal Division - Department of Justice
      1400 New York Ave. NW
      Ste. 600
      Washington, DC 20005
      p (202) 616-8900
      f (202) 514-1793

      JENNIFER TORITTO LEONARDO
      Trial Attorney
      Child Exploitation and Obscenity Section
      Criminal Division - Department of Justice
      1400 New York Ave. NW
      Ste. 600
      Washington, DC 20005
      p (202) 514-5780
      f (202) 514-1793

# TABLE OF CONTENTS

PRELIMINARY STATEMENT

DISCUSSION

I.  The First Amendment Does Not Permit Journalists To Engage In Criminal Conduct.

II. A Broad Based Affirmative Defense For Legitimate Literary, Artistic, Scientific, Or Educational Purposes Is Not Supported By Either Legislative History Or Case Law.

  A.  The Importance Of *New York v. Ferber*

  B.  Federal Legislative Response To *Ferber*

  C.  *Ferber's* Progeny Does Not Support The Availability Of A Legitimate Purpose/First Amendment Defense.

III. The Lack Of A Legitimate Purpose/First Amendment Defense Does Not Make 18 U.S.C. § 2252A Overbroad.

IV. Logic And Policy

V.  Conclusion

# TABLE OF AUTHORITIES

| **CASES** | **PAGE** |
|---|---|
| *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) | passim |
| *Branzenburg v. Hayes*, 408 U.S. 665 (1972) | 3, 4 |
| *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) | 3, 4 |
| *Miller v. California*, 413 U.S. 15 (1973) | 6, 8 |
| *New York v. Ferber*, 458 U.S. 747 (1982) | passim |
| *Osborne v. Ohio*, 495 U.S. 103 (1990) | 5, 7, 13 |
| *Stanley v. United States*, 932 F. Supp. 418 (E.D.N.Y. 1996) | 10 |
| *United States v. Bausch*, 140 F.3d 739, 741-42 (8th Cir. 1998) | 12 |
| *United States v. Bunnell*, 2002 WL 927765 (D.Me. 2002) | 12 |
| *United States v. Fox*, 248 F.3d 394 (5th Cir. 2001) | 12 |
| *United States v. Hibbler*, 159 F.3d 233 (6th Cir. 1998) | 12 |
| *United States v. Hilton*, 167 F.3d 61 (1st Cir. 1999) | 12 |
| *United States v. Lamb*, 945 F. Supp. 441 (N.D.N.Y. 1996) | 10, 11 |
| *United States v. Matthews*, 209 F.3d 338 (4th Cir. 2002) | passim |
| *United States v. Ronald Bryant*, No. CR-92-35R (W.D. Wash. May 13, 1992) | 12 |
| *United States v. Upham*, 168 F.3d 532 (1st Cir. 1999) | 12 |
| **STATUTES AND OTHER AUTHORITIES** | |
| 18 U.S.C. § 2252 | 2, 7, 8 |
| 18 U.S.C. § 2252A | 4, 5, 8, 9, 10, 12 |

| | |
|---|---|
| 18 U.S.C. § 2256 | 5, 9, 12 |
| 18 U.S.C. § 3509(m) | 14 |
| 1984 U.S.C.C.A.N. 492 | 7 |
| H.R. Rep. No. 98-536, 98th Cong., 2d Sess. (1983) | 7, 8 |

1  ANDREW G. OOSTERBAAN
   Chief, Child Exploitation and Obscenity Section
2  Criminal Division - Department of Justice

3
   STEVE GROCKI (VABN 41502)
4  Trial Attorney
   Child Exploitation and Obscenity Section
5  Criminal Division - Department of Justice

6  JENNIFER TORITTO LEONARDO (LICENSED IN NEW YORK)
   Trial Attorney
7  Child Exploitation and Obscenity Section
   Criminal Division - Department of Justice
8
       1400 New York Ave. NW
9      Ste. 600
       Washington, DC 20005
10     p (202) 616-8900
       f (202) 514-1793
11
   Attorneys for Plaintiff
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BERNARD V. WARD, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 07-0602 VRW <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RULING THAT THE DEFENDANT IS ENTITLED TO PRESENT THE AFFIRMATIVE DEFENSE THAT HE RECEIVED AND DISTRIBUTED THE CHARGED CONTRABAND FOR LEGITIMATE, FIRST AMENDMENT PROTECTED PURPOSES <br><br> DATE: May 8, 2008 <br> TIME: 2:00pm <br> COURT: 6, 17th Floor <br> JUDGE: Honorable Vaughn R. Walker |

Defendant has filed a motion seeking a pretrial ruling regarding his alleged entitlement to present an affirmative defense that his receipt and distribution of child pornography was protected by the First Amendment as he was allegedly acting in furtherance of a journalistic

enterprise. He proffers to this Court that he will provide proof that he received and distributed the contraband, which consists of numerous hard core images of prepubescent minors engaged in sexual acts with adults, for the purpose of furthering his First Amendment protected right to research and comment upon "societal mores." As an alternative, Defendant argues that if his request for a First Amendment use defense is denied, then the charged statute is plainly overbroad. The defendant's motion has no merit and should be denied.

## PRELIMINARY STATEMENT

In advancing his position for a First Amendment affirmative defense, the defendant alternates between two theories. First, he offers that child pornography laws contain an implicit First Amendment based as-applied affirmative defense, which applies to his case because he acted with a purported legitimate journalistic purpose. This type of challenge is generally construed narrowly and considered based on the specific facts of an individual case. Therefore, the question is whether the statute is unconstitutional, and therefore not applicable as-applied to the defendant, if a jury finds he engaged in his criminal conduct as a journalist to "gather news?"

Second, the defendant argues more broadly that the First Amendment protects a larger class of individuals who may technically violate child pornography laws, but do so in furtherance of a legitimate literary, artistic, scientific, or educational purpose. He believes that because his journalistic news gathering is a legitimate literary purpose, he would then fall within this category of individuals to which this broad implicit affirmative defense is available.

To support this position, the defendant cites to the landmark child pornography case, *New York v. Ferber*, 458 U.S. 763 (1982), the legislative history of a parallel child pornography statute, 18 U.S.C. 2252, passed shortly after *Ferber,* and a few district court opinions interpreting both. These decisions, discussed below, recognized such an affirmative defense as-applied to their particular defendants (academics and a psychiatrist). Importantly, however, none of these defendants were journalists. Further, the legal underpinnings for a broad-based legitimate purpose affirmative defense the defendant advances (also advanced identically by a journalist defendant in *United States v. Matthews*, 209 F.3d 338 (4th Cir. 2000) ,which the court rejected) was clearly foreclosed by the Supreme Court in *Ferber* when it distinguished child pornography

laws from obscenity laws. Therefore, as will be more fully explained below, the defendant cannot sneak his personal as-applied challenge for journalists, which is not supported by the law, under this broader framework, which also finds no support in law or legislation.

## DISCUSSION

### I. The First Amendment Does Not Permit Journalists to Engage in Criminal Conduct.

Throughout his argument, the defendant states his criminal conduct was "an expert exercise of his First Amendment-protected right to research and comment upon societal mores" or "investigate a story on child pornography [by] receiv[ing] and/or distribut[ing] otherwise contraband imagery." Def. Memorandum of Points and Authorities, p. 2. He attempts to point out that "the *Ferber* court never held that receipt and/or distribution of child pornography might not be necessary to entirely legitimate, First Amendment-protected journalistic activity." *Id.*, p. 7. In short, he categorically states that he should be able to argue, and obtain an instruction from this Court to support, the fact that this journalistic purpose is a lawfully recognized defense to what would otherwise be criminal conduct, the distribution and receipt of numerous images of hard core child pornography. To the contrary, there is no legal support for defendant's position.

Indeed, if one views the defendant's argument as a true as-applied defense based on his purported journalistic purpose, then the "First Amendment" defense should be available to journalists not only in the context of child pornography cases where the First Amendment has figured prominently, but also for any general criminal law. For example, does a journalist have essentially First Amendment protection for engaging in criminal conduct for the purpose of researching drugs or terrorism in America? The case law definitively says no. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991); *Branzburg v. Hayes*, 408 U.S. 665 (1972).

In *Cowles Media Co.*, the Supreme Court stated expressly that a "well-established line of decisions [holds] that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cowles Media Co.*, 501 U.S. at 668. Thus, while the First Amendment protects "news gathering" activities generally, it does not grant a "license on either the reporter or his news sources to violate valid criminal laws." *Branzburg*, 408 U.S. at 691.

-3-

In *United States v. Matthews*, 209 F.3d 338 (4th Cir. 2000), the only reported decision to squarely address a request to recognize a legitimate purpose defense for a journalist in a child pornography case, the court pointed out that while the defendant did not claim that a journalist engaged in news gathering activities is entitled to special exemption from Section 2252, certain *amici* did argue for such an exception. *Matthews*, 209 F.3d at 338, n. 3. In plainly refuting this "journalism" exception, the *Matthews* court, citing *Cowles Media Co.* and *Brazenburg*, stated that "Amici's argument is ill-advised." *Id.* The First Amendment does not grant journalists the authority to violate valid criminal laws applicable to the general public. The laws against distribution and receipt of child pornography are of course generally applicable and do not single out the press.

**II. A Broad Based Affirmative Defense For Legitimate Literary, Artistic, Scientific, Or Educational Purposes Is Not Supported By Either Legislative History Or Case Law.**

Because the law provides no First Amendment based license to journalists to violate laws, the defendant attempts to advance his position by confusing the law as it relates to obscenity and child pornography. In this way, the defendant's motion is a bit of a moving target. He seemingly shifts gears between a narrow as-applied defense for a legitimate journalist purpose to a broader-based affirmative defense (or as-applied defense) for all legitimate literary, artistic, scientific or educational purposes. In making this shift, the defendant repeatedly invokes the First Amendment but never attempts to distinguish between content-based First Amendment protection (on which most child pornography discussion has centered) and use-based First Amendment protections (which can be found more prominently in obscenity discussions).

The defendant in this case is charged with violating 18 U.S.C. § 2252A(a)(2), and is specifically charged with the distribution and receipt of images depicting real children per 18 U.S.C. § 2256(8)(A). Section 2252A was passed in 1996 pursuant to the Child Pornography Prevention Act (CPPA) as a supplemental statute to 18 U.S.C. § 2252, and in most respects (excepting a now invalidated provision in 2252A for "virtual" and "youthful adult" child pornography), is the same. Importantly, as it bears on the ultimate issue proposed by defendant's motion regarding a broad based affirmative defense for any legitimate literary, artistic, scientific, or educational purpose, it is useful to examine how these statutes' evolved following a distinct

legal departure from obscenity law.

### A. The Importance Of *New York v. Ferber*

In the landmark Supreme Court ruling of *New York v. Ferber*, 458 U.S. 747 (1982), child pornography involving the sexual abuse of actual minors, as a class of speech, was deemed outside the First Amendment's protection. Contrary to the defendant's assertions, this ruling applied to both the production and use (distribution, receipt, transportation, and possession) of child pornography, a fact supported recently in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 235 (2002). *See also Osborne v. Ohio*, 495 U.S. 108 (1990) (holding Constitutional Ohio law prohibiting possession of child pornography, which was enacted to protect well-being of minors and destroy the market for the exploitive use of children by penalizing those who possess and view offending materials). This decision clearly signaled that obscenity and child pornography were distinct legal concepts. After *Ferber*, child pornography jurisprudence departed from the line of cases concerning obscenity that had guided child pornography prosecutions up to that point. Specifically, it meant that a legislature was "entitled to greater leeway in the regulation of pornographic depictions of children" so long as the harms to children (identified below a certain age), as articulated in *Ferber*, remained the justification for the law. *Ferber*, 458 U.S. at 756. Importantly, regarding the use of such materials, the *Ferber* court added:

> [the] distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled. *Id.* at 759.

With this statement, the *Ferber* Court unequivocally addressed not only the production of child pornography by "creators," but also those who exist within the distribution network for child pornography.

With the shift away from obscenity law, the *Ferber* Court also addressed the obvious necessity of shifting away from the legal standard for obscenity articulated in *Miller v. California*, 413 U.S. 15 (1973), commonly referred to as the *Miller* test. *See generally Ferber*, 458 U.S. at 759-767. That standard, created approximately 10 years prior to the *Ferber* decision, attempted to balance the government's interest in criminalizing obscene material with the First

Amendment right to free speech by including a provision requiring that the material lacked any serious literary, artistic, scientific, social, or educational value. *Id.* In *Ferber*, however, the majority flatly declined to carve out an exception in child pornography laws for material that might have literary, artistic, scientific, or educational value as it found the harm addressed by child pornography laws was of unsurpassing importance. *Id.* The Court stated "[w]e consider it unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work." *Id.* at 756. The Court added, "a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography. 'It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value.'" *Id.* at 763. *See also generally Free Speech Coalition*, 535 U.S. 234(while invalidating definitions for child pornography for "virtual" or "youthful adult" child pornography, the Court upheld 18 U.S.C. 2252A provisions related to the sexual abuse of actual minors including possession of child pornography despite an absence of a requirement for no literary, artistic, scientific, or educational value).

The defendant attempts to circumvent the holding of *Ferber* and its progeny by citing heavily from two concurring opinions in *Ferber*, the first written by Justice Brennan and joined by Justice Marshall, and the other written independently by Justice Stevens, to support his contention that the *Ferber* majority does not address the "use" issue and that *Ferber* supports a legitimate use affirmative defense. Def. Memorandum of Points and Authorities, p. 9. The problem with this tactic is two-fold. One, the defendant misses the fact that the *Ferber* decision deals specifically with a case of distribution and not production. In fact, the defendant in *Ferber* was a proprietor of a Manhattan bookstore who sold two films he did not create devoted almost exclusively to depicting two young boys masturbating. *Ferber*, 458 U.S. at 751. He was then charged under New York law with two counts controlling the dissemination of child pornography. Thus, when the defendant claims that "[a]ll three opinions [the majority, O'Connor, and Brennan] ..., and their varying views about First Amendment protection, are focused at the production-in other words, the creation and distribution by the creators-of

offending material, the target of the New York law," he is flat wrong. On the contrary, the *Ferber* majority speaks directly to the distribution issue concluding the network for child pornography must be dismantled to stop the sexual abuse of minors to create such images. *Id.* at 759. There is nothing within the majority opinion, or subsequent Supreme Court cases interpreting its meaning, that suggests a charge of distribution, receipt, or possession of child pornography requires a finding that the material or circumstances in how it is used has no literary, artistic, scientific, or educational value. *Id.*; *See also generally Osborne*, 495 U.S. 108; *Free Speech*, 535 U.S. 234.

Second, Stevens' concurring opinion in *Ferber*, which he wrote independently, regarding the necessity for a literary "good" use exception was not shared by the rest of the Court. Furthermore, it has clearly been tempered over the years as Justice Stevens joined the *Free Speech* majority in reiterating that *Ferber* supports prohibitions against child pornography even if the laws do not contain any exception for literary, artistic, scientific, or educational value. *See Free Speech*, 535 U.S. at 238. Ultimately, there is no support for a broad based First Amendment affirmative defense for legitimate use in the *Ferber* decision, a fact that *Free Speech* solidified once and for all.

### B. Federal Legislative Response To *Ferber*.

Shortly after the *Ferber* decision, Congress revised Section 2252 by eliminating provisions pertaining to obscenity and commercial purpose, thereby bringing the federal law in close alignment to the New York law upheld in *Ferber*. See H.R. Rep. No. 98-536, at 2-7 (1983), reprinted in 1984 U.S.C.C.A.N. 492, 493-98. Notably, the new law specifically outlawed the production, distribution, receipt, and possession of child pornography. *Id.* With the obscenity requirement expressly eliminated, the third prong of the *Miller* Test[1], which requires that obscene material must lack serious literary, artistic, scientific, social, or educational value, was also eliminated. *Id.*

---

[1] The Miller test requires obscene materials, taken as a whole to satisfy three requirements: 1) it must appeal to a prurient interest, 2) it must be portrayed in a patently offensive way, and 3) it must lack any serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 23.

It is worth noting that since 1984, Section 2252 has been amended several times. In 1998, an affirmative defense was added to the statute for those who possess less than three matters containing child pornography and in good faith took reasonable steps to destroy each such visual depiction. Despite these considerable revisions and additions, Section 2252 still has no provision for a broad based affirmative defense for literary, artistic, scientific, social, or educational value. Similarly, the charged statute in this case, Section 2252A, has also been revised numerous times since its inception in 1996, most recently in 2006, and has never contained a provision for the type of affirmative defense the defendant argues is implicit in its 1984 version of Section 2252.

To overcome this obvious lack of support for his position in the statute, the defendant speaks at length about the legislative testimony from 1984 that discussed the exclusion or inclusion of an affirmative defense for literary, artistic, scientific, social, or educational value. Specifically, the defendant focuses on the testimony of a Justice Department official during a hearing in 1984. As such, the defendant argues for the recognition of an implicit broad based First Amendment defense for all proper literary, artistic, scientific, social, or educational use, that Congress expressly declined to provide at the time and in the 24 years since. At best, the 1984 legislative history provides dubious support for an implicit as-applied defense in a very small number of circumstances, none of which apply here. However, the number of Congressional revisions to Sections 2252 and 2252A without the addition of any "good use" affirmative defenses foreclose defendant's claim. Furthermore, even if a limited as-applied legitimate use defense existed, the defendant here, as a journalist, cannot claim any legal support for such a narrow as-applied exemption for himself from valid general child pornography laws.

Free Speech Coalition comments directly on the scope of prohibition *Ferber* authorized: "Like the law in *Ferber*, the CPPA seeks to reach beyond obscenity, and it makes no attempt to conform to the Miller standard. For instance, the statute would reach visual depictions, such as movies, even if they have redeeming social value." 535 at 238. Ultimately, the Court distinguishes the CPPA's ban on "virtual" or "youthful adult" child pornography from child pornography which, under *Ferber*, involved actual children engaged in sexual acts and may be banned without regard to whether it depicts works of value. In making this distinction, the Court

certainly clarified the reach of *Ferber* and 2252A as written, which includes the prohibition of the transportation, distribution, receipt, and possession of child pornography without regard for redeeming social value so long as the nexus to an actual child being exploited..

### C. *Ferber's* Progeny Do Not Provide For A First Amendment or Legitimate Purpose Defense.

The defendant cites to a few district court cases that he argues have partially addressed the question of a First Amendment use defense in the context of child pornography. Notably, a review of these decisions reveals that none, other than *Matthews*, addressed the use of child pornography by journalists engaged in "news gathering," and none recognized a broad-based affirmative defense for all legitimate literary, artistic, scientific, or educational purposes for which the defendant advocates. At best, a few of the district court opinions–issued before the *Free Speech* decision and many Congressional revisions to federal child pornography laws–recognized narrow, case-specific, as-applied affirmative defenses.

First, the defendant cites to *Stanley v. United States*, 932 F.Supp. 418 (E.D.N.Y. 1996), which was a forfeiture case. In his recitation of the holding of the case, the defendant states that the "district court assumed a 'literary, scientific, or educational exception' to the forfeiture statute exists..." Def. Memo in Support of Mot. P. 3. Actually, this statement misrepresents the true holding of the case. As the court in *U.S. v. Lamb*, 945 F.Supp. 441, 449 (N.D.N.Y. 1996), also cited by the defendant, articulated later that same year, *Stanley* "holds that the United States may punish persons trafficking in materials covered by the Protection of Children Act that do possess redeeming social and scientific qualities." In fact, the *Stanley* court ultimately concluded that "[w]ithout a viable exception, the items seized from Stanley are subject to forfeiture pursuant to 18 U.S.C. 2254(a)(1)."[2] *Stanley,* 932 F. Supp. at 421.

Turning to the Northern District of New York's decision in *Lamb, supra,* the trial judge

---

[2] The defendant's confusion concerning the holding of the case most likely stems from the fact that after concluding that there is no exception for serious literary, artistic, scientific, social, or educational value, the court goes on to state "Assuming for a moment that a[n] ... exception exists, the seized items would be subject to forfeiture because Stanley fails to qualify as a bona fide researcher." *Stanley,* 932 F. Supp. at 421.

-9-

concluded that Congress, in expressly rejecting such an affirmative defense, "just as easily [could have meant] that Congress acknowledged that some small amount of material literally covered by the statute was nonetheless protected by the guarantee of free speech." *Lamb,* 945 F. Supp at 449. Therefore, the judge reasoned a defendant could assert as an affirmative defense any of the reasons cited in *Ferber's* concurring opinions, including Stevens' "good use" exception. *Id.* The Fourth Circuit in *United States v. Matthews, supra,* disagreed with this reasoning and found that *Ferber* did not permit such an expansive defense. Unlike *Lamb,* the *Matthews* court's reasoning, acting with the benefit of additional enacted legislation from 1996 to 2000, comports with the Supreme Court's 2002 decision in *Free* Speech, which clarified *Ferber's* reach and the legislative interpretation for 2252A. *See generally Free Speech,* 535 U.S. 234. As stated in *Matthews,* "Congress enacted a statute that would subject to criminal prosecution not only child pornography dealers, but also those who lack a profit motive, *including individuals, like journalists, whose professional standing might help to disguise a fetish for such material."* *Matthews,* 209 F.3d at 350 (emphasis added).

      The defendant attempts to assert that the Fourth Circuit in *Matthews,* as the only appellate court to consider the issue squarely as it pertained to a journalist, simply got it wrong. In *Matthews,* the defendant was similarly situated to the defendant in the current case. He was a journalist who claimed to be engaging in the trading of child pornography over the Internet for the purpose of conducting "free lance" research for a story. Importantly, unlike the defendant here, Matthews backed away from asserting that journalists were entitled to a First Amendment exemption from the enforcement of child pornography laws. Left with a broad based legitimate use/First Amendment defense (identical to the defendant's alternate argument here) for any valid literary, artistic, scientific, or educational purpose, the *Matthews* court, in a well reasoned, lengthy opinion, concluded neither *Ferber* nor the legislative history support such an affirmative defense. It stated:

> To recapitulate, we believe that *Ferber* cannot fairly be read to permit a defense of the sort urged by Matthews. The asserted defense, apparently derived from the obscenity cases, fails to account for the discrete set of harms to which child pornography legislation is addressed. Such a defense would result in far more possibly impermissible applications of the statute than *Ferber* envisaged, fail to view the depictions in isolation as *Ferber* directed, and allow the dissemination of depictions that threaten the very harms

to children described in *Ferber*. *Matthews,* 209 F.3d at 348.

The other cases cited by the defendant, *United Stated v. Upham*, 168 F.3d 532 (1st Cir. 1999), *United States v. Hibbler*, 159 F.3d 233, 236 (6th Cir. 1998), and *United States v. Hilton*, 167 F.3d 61 (1st Cir. 1999), were also cited by the defendant in *Matthews*. None of those cases support a broad based legitimate use/First Amendment defense. As indicated in *Matthews*,

> neither the *Upham* nor *Hibbler* court [as well as *Hilton, Bunnell*, and *Bryant*] directly considered the breadth of a possible First Amendment defense to § 2252. We believe that careful consideration of that question compels the conclusion we have reached here and note that another of our sister circuits seems to agree. *See United States v. Bausch*, 140 F.3d 739, 741-42 (8th Cir. 1998) (refusing to find plain error where defendant failed to raise at trial his alleged First Amendment defense that he possessed child pornography as an aid to create artwork, and observing that the *Ferber* Court 'cast considerable doubt on the viability of an as-applied challenge like the one in this case"). *Matthews*, 309 F.3d at 338 n. 8. (internal citation omitted).

Indeed, it is clear after reviewing those decisions that those courts dealt only with very narrow as-applied defenses. Further, these decisions preceded the *Free Speech* decision, as well as further extensive legislative amendments to child pornography laws, which greatly clarified the full intent of, and legal supported for, such laws.[3]

**III. The Lack Of A Legitimate Purpose/First Amendment Affirmative Defense Does Not Make 18 U.S.C. § 2252A Overbroad.**

The defendant argues, in the absence of a recognized implicit broad First Amendment defense, that federal child pornography laws, including 2252A, must be overbroad. To support this position, the defendant misreads *Ferber* and *Osborne,* and ignores *Free Speech,* to conclude that the Supreme Court has never examined the issue concerning whether a statute that expressly excluded the possibility of any legitimate purpose/First Amendment exception or defense could

---

[3]Another case cited by the defendant, *United States v. Hilton*, 167 F.3d 61 (1st Cir. 1999), also does not support a First Amendment defense when an actual child is used in the production of child pornography. The portion of the *Hilton* opinion cited by the defendant was written in the context of 2252A's prohibition against images of "youthful adult" child pornography, a portion of the statute later struck down by *Free Speech*. *United States v. Bunnell*, 2002 WL 927765 (D.Me. 2002), an unpublished opinion, takes the *Hilton* reasoning and misapplies it to 2256(8)(A) prosecutions (albeit in narrow as-applied situations), but offers little support for doing so. Additionally, the *Bunnell* court does so, despite noting the opposite view of *Matthews* and a 5th Circuit opinion in *United States v. Fox*, 248 F.3d 394 (5th Cir. 2001), *vacated*, __ S.Ct.__, 2002 WL 628661 (remanded for consideration in light of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389 (2002).

survive an overbreadth attack. Further, he returns to Justice Stevens' concurrence in *Ferber* to argue that a First Amendment use defense must remain if any child pornography statute is to survive an overbreadth challenge. Unfortunatley, *Ferber, Osborne, and Free Speech* dealt at length with the question of overbreadth and each concluded that so long as the child pornography statute is sufficiently tailored (by age and content) and relates to the protection of actual children, it does not require, like obscenity cases, a defense for legitimate use. Moreover, Congress, responding to this dictate, repeatedly has passed its child pornography laws without such a defense, either expressly or implicitly.

**IV. Logic And Policy.**

The defendant concludes his argument by turning to logic and policy, stating that it is irrational to prosecute and convict those who act only with the best of intentions when it comes to child pornography crimes. The defendant argues that these individuals do not commit the harms child pornography laws are designed to eliminate. On the contrary, the defendant distributed images of real children engaged in sexual acts. He cannot recover those images and has no control over what use others make of them. Aside from the *Ferber* Court's recognition that the exploited child, whose harm is essentially sacrificed in the name of a "good story," does not care how or why his or her permanent record of sexual abuse is disseminated, logic dictates that society cannot allow do-gooders to commit crimes, even for the best of reasons. Child pornography is controlled contraband and thus is best analogized to another proscribed contraband, illicit drugs. In the same way that writers cannot legally trade in drugs to investigate drug cartels or doctors cannot maintain illegal stashes of narcotics in their homes to conduct side "research," they cannot do the same with child pornography. To allow such broad based, legally recognized "First Amendment" defenses would invite every defendant charged with child pornography crimes to suddenly become a legitimate researcher educating the masses via their web blog.[4]

---

[4] The defendant invites comparison of his own situation to that of members of law enforcement and the judicial system. Aside from not being entitled to any status of acting under a public authority, the defendant's assertions are, as the court in *Lamb* articulated, pure sophistry.

### V. Conclusion

For these reason, the United States respectfully requests the Court deny defendant's motion.[5]

Respectfully submitted,

ANDREW G. OOSTERBAAN
Chief, Child Exploitation and Obscenity Section
Criminal Division - Department of Justice

By:   /s/ Steven J. Grocki
STEVE GROCKI (VABN 41502)
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division - Department of Justice
1400 New York Ave. NW
Ste. 600
Washington, DC 20005
p (202) 616-8900
f (202) 514-1793

JENNIFER TORITTO LEONARDO
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division - Department of Justice
1400 New York Ave. NW
Ste. 600
Washington, DC 20005
p (202) 514-5780
f (202) 514-1793

---

Moreover, the recently enacted 18 U.S.C. 3509(m) states explicitly that "[i]n any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court. 18 U.S.C. 3509(m). With this explicit regulation, Congress mandates that the Government must control child pornography contraband and therefore would obviously not be criminally liable for its possession.

[5]The defendant asks the Court to take judicial notice of the brief attached to his motion. The government would object to the Court taking such notice. While it is apparently that the brief was filed in the *Matthews* Case and the government understands that the Court may consider it as part of motions practice, it is unnecessary to take judicial notice of it (as it is an argument and not fact) to do so.

-13-